# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:18-cr-128-13 |
| v. | : | Judge Michael R. Barrett |
| SAVALAS MILLS, | : | **ORDER DENYING MOTION FOR** |
| Defendant. | : | **COMPASSIONATE RELEASE** |

This matter is before the Court on Defendant Savalas Mills' motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Docs. 480, 483). The United States opposes release. (Doc. 481). For the reasons discussed below, Defendant's motion will be denied.

## I.     BACKGROUND

On February 13, 2020, Defendant pled guilty to a single count of conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). (Docs. 240, 255). The Court ordered his then-current detention status—in the custody of the United States Marshal Service and detained at the Boone County Jail—to remain in effect. (Doc. 255 PAGEID 665; *see* Docs. 61, 64, 71, 72). Two months later, on April 16, 2020, Defendant filed a motion to reconsider bond. (Doc. 298). Based on the early-raging COVID-19 pandemic and his heightened risk for severe illness because of his asthma—a previously-diagnosed medical condition for which he was *not* receiving treatment at Boone County—Defendant asked for a short-term temporary release until sentencing. (*Id.*). The United States did not oppose a short-term temporary release so long as certain conditions were in place. (Doc. 299). The Court ordered Defendant's immediate release on April 20, 2020. (Doc. 300).

1

Despite his professed fear of becoming severely ill from COVID-19 if incarcerated, Defendant, upon release from USMS custody, chose to surrender himself on charges pending in Kenton County, Kentucky. (Doc. 480 PAGEID 1852–53). He was sentenced to a two-year term of imprisonment, to begin on August 24, 2020. (*Id.*); *see* (Doc. 480-1). Defendant thereafter was brought before this Court (on a Writ of Habeas Corpus Ad Prosequendum) on September 1, 2020 and sentenced (on the federal charge) to 60 months of imprisonment (with credit for time served) followed by five years of supervised release, to run concurrent with his Kentucky sentence. (Docs. 322, 324, 325). Having completed his Kentucky sentence, Defendant is now in the custody of the Bureau of Prisons (BOP) and currently housed at FCI Gilmer (https://www.bop.gov/inmate_loc/ (last visited 04/28/2022)). His projected release date is May 7, 2023. *Id.*

## II. DISCUSSION

### A. Availability of Compassionate Release

Pertinent here, the court "may not modify a term of imprisonment" based on a defendant's compassionate release motion until "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has ruled that, despite the circumstances presented by COVID-19, the exhaustion requirements found in § 3582(c)(1)(A) are mandatory and thus present "a glaring roadblock foreclosing compassionate release." *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020)). Prisoners have two routes, then, to directly petition courts for compassionate release: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt of such a

request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A).

In support of lapse, Defendant attaches a "facsimile" of his letter request to the Warden sent on January 22, 2022. (Doc. 480-3). When no response came, Defendant submitted two more requests, first on February 16, 2022 and last on February 26, 2022. (*See* Docs. 480-4, 480-5). Defendant states that he received no response to any of these requests, including the most recently submitted, and more than 30 days have passed. (Doc. 480 PAGEID 1854).

The United States counters that the Warden did respond to Defendant's January request on February 14, 2022. (Doc. 481 PAGEID 1872). He denied compassionate release "at this time" and advised Defendant that if he was "not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response." (Doc. 481-1 PAGEID 1883). Defendant failed to file an administrative appeal, so the United States argues that the statutory exhaustion requirement has not been satisfied. (Doc. 481 PAGEID 1873 (citing *Alam*, 960 F.3d at 836)).

*Alam*, however, stands for the complete opposite proposition: "Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, **no matter the appeals available to them**." 960 F.3d at 834 (emphasis added); *see United States v. Kelly*, No. 2:15-cr-00247, 2020 WL 7046960, at *3 (S.D. Ohio Dec. 1, 2020) ("Following *Alam*, a motion for compassionate [release] will be ripe in either of the following circumstances: (1) if an incarcerated person receives a denial and is able to fully exhaust all of h[is] administrative remedies ***before*** the 30-day waiting period has elapsed; or (2) whenever an incarcerated person waits 30 days from the date [ ]he submitted h[is] request to the warden, regardless of whether the warden responds.") (emphasis in original).

3

Defendant's motion for compassionate release was filed on April 6, 2022. Because this filing occurred more than 30 days after his January 22 letter request—a request that the Warden denied—the undersigned can proceed to the merits of Defendant's motion.

**B. No Extraordinary or Compelling Reasons Support Defendant's Release**

"The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances." *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). A three-step inquiry is necessary. *Id.* at 1101. "[A]t steps one and two of the § 3582(c)(1)(A) inquiry, district courts must find both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and 'that such a reduction is consistent with *applicable* policy statements[1] issued by the Sentencing Commission." *Id.* at 1109 (emphasis in original). *Jones* clarifies that "the passage of the First Step Act rendered [U.S.S.G.] § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[2] "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have **full discretion** in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* (emphasis added). In other words, "federal judges may skip step two

---

[1] The policy statement of the Sentencing Commission appears at Section 1B1.13 of the Guidelines. The Commentary to § 1B1.13 describes several ways that a defendant can demonstrate an "extraordinarily and compelling" reason, but only one concerning medical conditions unrelated to advanced age. U.S.S.G. § 1B1.13 cmt. n.1(A). As discussed *infra*, the Sentencing Commission's policy statement was not amended after the enactment of the First Step Act, which now allows a defendant to file a motion for compassionate release. Rather, it still speaks only to determinations by the Director of the BOP in the rare instance in which he would file such a motion with a court.

[2] Since *Jones* was decided, the Fourth, Fifth, Seventh, Ninth, and Tenth Circuits also have reached the conclusion that § 1B1.13 is inapplicable to inmate-filed compassionate release motions. *See United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 799–802 (9th Cir. 2021); *United States v. Maumau*, 993 F.3d 821, 836–37 (10th Cir. 2021).

4

of the § 3582 inquiry[.]" *Id.* at 1111. Assuming an extraordinary and compelling reason is found, step three then requires consideration of the applicable sentencing factors listed in 18 U.S.C. § 3553(a). *Id.* at 1106 (citing *United States v. Ruffin*, 978 F.3d 1000, 1003–06 (6th Cir. 2020)).[3]

Considering the unique circumstances surrounding the coronavirus pandemic, numerous courts initially concluded that "'extraordinary and compelling reasons' exist for purposes of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." *See*, *e.g.*, *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (collecting cases).[4] "Asthma, if it's moderate to severe," is one such condition. *See* "People With Certain Medical Conditions," Centers for Disease Control and Prevention (Feb. 25, 2022) available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 4/28/2022) ("Having a chronic lung disease can make you more likely to get very sick from COVID-19.").[5] Review of the BOP Health Services records submitted by the United States confirm that Defendant is prescribed inhalers for asthma, although it is unclear whether his condition is "moderate to severe." This point is moot, however, because these records

---

[3] In *Jones*, the Sixth Circuit panel ultimately upheld the district court's denial of compassionate release by concluding that the trial judge's assessment of the § 3553(a) factors did not constitute an abuse of discretion. 980 F.3d at 1111–16. But because the trial judge assumed for the sake of argument that extraordinary and compelling reasons would support a reduction in sentence, the *Jones* concurrence observed that the majority's discussion of § 1B1.13 was unnecessary to the decision. *Id.* at 1116–17. Subsequently, however, the Sixth Circuit made its position clear. "[W]e hold that § 1B1.13 is **not** an applicable policy statement for compassionate-release motions brought directly by inmates, and so **district courts need not consider it** when ruling on those motions." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (emphasis added). The panel further clarified that, "as in *Jones* and *Ruffin*, district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Id.*

[4] This standard, coupled with an examination of the prison's infection rates, was approved in—though not mandated by—the panel in *Elias*. 984 F.3d at 520–21.

[5] Counsel also refers to the Presentence Investigation Report (¶ 144) that states his client has been "treated" for high blood pressure (hypertension) and high cholesterol (hyperlipidemia) and that hypertension "runs in his family." (Doc. 480 PAGEID 1856). Assuming these conditions remain current, the CDC list does not include hyperlipidemia at all and qualifies hypertension as a *possible* risk.

also confirm that Defendant has been fully vaccinated for nearly a year and was recently boosted,[6] a circumstance that "substantially undermines" his request for a sentence reduction. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). On this point, the Sixth Circuit has concluded:

> To that end, we agree with the Seventh Circuit that **a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction**. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*

*Id.* (emphasis added); *see United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) ("Accepting the serious nature of [Defendant's] alleged medical conditions, her argument is foreclosed by our recent holding [in *Lemons*].").

In line with *Lemons*, then, because Defendant is fully vaccinated and boosted, the undersigned fails to find that his asthma, regardless of severity, constitutes an extraordinary and compelling reason to support a sentence modification under § 3582(c)(1)(A).

### III. CONCLUSION

Having found no extraordinary and compelling reasons in support of a sentence reduction,

---

[6] Defendant received both doses of the Moderna COVID-19 vaccine (on April 13, 2021 and on May 12, 2021) and a Pfizer-BioNTech booster (on February 23, 2022). (Doc. 481-2 SEALED PAGEID 2080–81). He tested positive a few weeks prior to receiving a booster; the records document no symptoms of illness. (*See id.* PAGEID 2076–77).

the compassionate release analysis ends.  *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *see also United States v. Tomes,* 990 F.3d 500, 504 (6th Cir. 2021) (citing *Elias*).[7]  Accordingly, Defendant Savalas Mills' motion for compassionate release (Doc. 480) is hereby **DENIED**.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court

---

[7] Thus, as previously noted, the Court need not proceed to step three of the § 3582(c)(1)(A) inquiry, "considering" the "applicable" sentencing factors listed in 18 U.S.C. § 3553(a).  *Elias*, 984 F.3d at 519.  *See Traylor*, 16 F.4th at 487 (citing *Elias*, "[B]ecause the district court determined that there was no extraordinary and compelling reason to grant [Defendant's compassionate release] motion, it also did not abuse its discretion by denying the motion without addressing whether the 18 U.S.C. § 3553(a) factors support a sentence reduction.").